UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 07 C 3972 |
| v. | ) ) | Judge Joan B. Gottschall |
| TEAM 150 PARTY, INC., JOSEPH P. WARD, and MICHAEL QUIGLEY, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7) filed by defendants Team 150 Party, Inc. ("Team 150"), Joseph P. Ward ("Ward"), and Michael Quigley ("Quigley"), collectively, the "Defendants." For the reasons stated below, the motion to dismiss [13] is denied.

### I. BACKGROUND[1]

This is a copyright dispute between rival union leaders over the design of a website. The plaintiff, the International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150"), is a labor organization representing approximately 22,000 construction industry workers. Defendant Ward was, at the time this dispute arose, challenging the incumbent officers of Local 150 and had formed Team 150 to do so.

---

[1] The factual allegations are taken from the complaint and are deemed true for purposes of this motion. *See Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005) (noting that all reasonable inferences must be drawn in favor of plaintiff when ruling on a Rule 12(b)(6) motion); *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2 (7th Cir. 2001) ("For purposes of a motion to dismiss for failure to join a party [under Rule 12(b)(7) and] Rule 19, [a court must] accept the allegations in the complaint as true.") (internal citations omitted).

Sometime before April 2006, Local 150 hired defendant Quigley, through his employer Midwest Operating Engineers Construction Industry Research and Service Trust Fund ("Midwest"), to develop a prototype website.  Effective April 1, 2006, Midwest assigned all copyright rights to the prototype website to Local 150, warranting that the work was original and did not infringe or violate the rights of any third party.

Quigley used a copy of Local 150's prototype website to develop a website for Ward and Team 150.  In late August 2006, Ward and Team 150 launched their own website, which copied a substantial portion of Local 150's prototype website.  On September 13, 2006, Local 150 sent a "cease and desist" letter to Ward to notifying him that the website infringed Local 150's copyright.

Local 150 registered its copyright on January 29, 2007, receiving Certificate of Registration No. TXu1-323-047.  The Certificate states the nature of authorship to be "computer program code (HTML) and text and photos on website,"[2] which Local 150 claims covers the source code and the virtual presentation of the website, including the text formatting and layout of the pictures.

## II. ANALYSIS

On July 13, 2007, Local 150 filed suit in federal court, invoking jurisdiction under 28 U.S.C. § 1331 and § 1338.  On September 27, 2007, it filed a two-count amended complaint alleging copyright infringement against all three defendants and unjust enrichment on the part of Ward and Team 150.

---

[2] The actual text of the Certificate reads: "computer program code ~~for website~~ (HTML) and text and photos on website exhibit."  See Am. Compl. Ex. D at 1.  The copy is somewhat unclear and the court cannot discern whether the strike-through is a copying error or an intentional alteration made by the Copyright Office.  Local 150 employs in its briefs the truncated version of the nature of authorship statement; therefore, for purposes of this motion, the court resolves the issue according to the plaintiff's implicit argument that the words "for website" were deleted.

A.  **Motion To Dismiss Pursuant To Federal Rule Of Civil Procedure 12(b)(7)**

The Defendants have moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary party.

  1.  Legal Standard

Rule 12(b)(7) allows a defendant to assert by motion the defense that the plaintiff failed to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7). Rule 19 provides, in relevant part, that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if that person claims an interest relating to the subject of the action" such that, if the person is not joined, his ability to protect the interest may be impaired or an existing party may be subject to a substantial risk of duplicative litigation. *Id.* 19(a)(1)(B). If the person cannot be joined, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Id.* 19(b). "The purpose of Rule 19 . . . is 'to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources.'" *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001) (quoting *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990)). If the court determines that "there is no way to structure a judgment in the absence of the party that will protect both the party's own rights and the rights of the existing litigants, the unavailable party is regarded as 'indispensible' and the action is subject to dismissal . . . under [Rule] 12(b)(7)." *Id.*

  2.  Analysis

The parties have submitted affidavits in support of their arguments. Although matter outside the pleadings is inappropriate on a Rule 12(b)(6) motion, "[i]n ruling on a dismissal for lack of joinder of an indispensible party, a court may go outside the pleadings and look to

extrinsic evidence." *Id.* at 480 n.4. Any conflicts must be resolved in favor of the plaintiff. *Id.* at 483.

Defendant Quigley admits he developed the websites for Local 150 and for Ward and Team 150. Quigley Aff. ¶ 2, attached to Defs.' Mot. to Dismiss. He avers that he designed the Local 150 and Team 150 websites using pre-designed webpage layouts, graphics, and formatting licensed from Lucky Marble Solutions Corporation ("Lucky Marble"). *Id.* ¶ 3. He further avers that he bought stock photographs of heavy equipment for each website from BigStockPhoto, Inc. ("BigStockPhoto"). *Id.* ¶ 4. Thus, both websites were designed using the same basic components. The Defendants submit that the plain language of the Copyright Registration, which claims authorship of "computer program code (HTML) and text and photos on website," shows that Local 150 is asserting ownership of computer code owned by Lucky Marble and photographs owned by BigStockPhoto. As a result, the Defendants claim that Lucky Marble and BigStockPhoto are necessary parties to this action.

The Defendants cite in support of their argument a single factually-distinguishable district court case, *Whitney, Atwood, Norcross Assocs., Inc. v. Architects Collaborative, Inc.*, No. 90-11521-Z, 1991 WL 2223 (D. Mass. Jan. 4, 1991). In *Whitney*, the plaintiff, an architectural firm, had developed the work at issue while under contract to a third party, the Commonwealth of Massachusetts, which had, in turn, hired the defendants to work on a similar project. *Id.* at *1. The court determined "an interest in a full and fair adjudication of the issues presented here requires that the [third party] be present." *Id.* at *2. It reasoned that the third party was necessary because it was unclear whether the plaintiff or the third party owned the copyright because of an ambiguous contract between them. *Id.* at *4. Here, Quigley obtained valid licenses from the third parties to use various "raw materials" in the development of Local 150's

4

website and then created a new work. Local 150 did not transfer any part of its interests in that new work to a third party and it has a Certificate of Registration for the copyright on the website at issue. Thus, the Defendants' invocation of *Whitney* is inapposite and resolution of this issue comes down to an interpretation of the scope of Local 150's copyright.[3]

Local 150 concedes that the prototype website was developed using a template from Lucky Marble and photographs from BigStockPhoto. Nevertheless, it asserts that Lucky Marble and BigStockPhoto do not have an interest in this action because Local 150's copyright does not cover the template and photographs themselves, but rather covers the "virtual presentation, including the text formatting and layout of the pictures for the website." Pl.'s Resp. to Mot. to Dismiss at 4 (citing Am. Compl. ¶ 18). In support of its argument, Local 150 submits the affidavit of Ron M. Borden ("Borden"), who is the manager of "the technology services corporation that services [Local 150]."[4] Borden Aff. ¶ 2, Ex. 1 to Pl.'s Resp. to Mot. to Dismiss. Borden reviewed the Local 150 computer systems and concluded that, over the course of almost two months, Quigley made "significant modifications to the [Lucky Marble] template," using Microsoft Frontpage software, including changes to "the layout, sizes of pictures, color scheme, selection and order of words used on the page, font size, order of buttons, and . . . sound." *Id.* ¶¶ 5-7. According to Local 150, its copyright extends only to the "look and feel" of the website that resulted from the manipulation of templates and stock photographs to create something unique. At least one other court has observed that the "look and feel" of a website may be covered by copyright. *See, e.g.*, *Mortgage Market Guide, LLC v. Freedman Report, LLC*, No. 06-cv-140-

---

[3] The court leaves to another day the disputed issue of whether § 102 or § 103 of the Copyright Act applies to Local 150's claim. *Compare* 17 U.S.C. § 102 (granting copyright protection to "original works of authorship"), *with id.* § 103 (granting protection to compilations and derivative works under certain conditions).

[4] Borden does not name the corporation.

FLW, 2008 WL 2991570, at *35 (D.N.J. July 28, 2008) (noting that, even where the form of a work cannot be separated from its function, "unique customization options . . . combined with [the] selection and arrangement of such options [on a website are] protectable under copyright laws"). *But see Blue Nile, Inc. v. Ice.com, Inc.*, 478 F. Supp. 2d 1240, 1245 n.4 (W.D. Wash. 2007) (expressing doubt as to whether copyright protection covers the "look and feel" of a website).

The record does not contain the full copyright application, so the Certificate of Registration is the only evidence of the meaning of the copyright. Both parties advance tenable interpretations of the meaning of the phrase "computer program code (HTML) and text and photos on website" in the Certificate. Given that Local 150 is aware that the template and photographs are not its own unique work, its argument that its copyright does not extend to those elements is reasonable. Therefore, finding the Registration ambiguous, the court accepts Local 150's explanation of the scope of its copyright. *See Davis Cos.*, 268 F.3d at 483 (requiring district court to resolve conflicts in testimony in favor of the plaintiff on a Rule 19 determination).

As narrowed by Local 150, the claim does not necessarily implicate the copyright rights of Lucky Marble and BigStockPhoto so as to render them "necessary parties" within the meaning of Rule 19(a). *See Davis*, 268 F.3d at 481 (specifying three reasons why a party is necessary). Consequently, the court does not reach the parties' remaining arguments on the feasibility of joinder. Defendants' motion to dismiss pursuant to Rule 12(b)(7) is denied without prejudice.

**B.     Motion To Dismiss Count II Pursuant To Federal Rule Of Civil Procedure 12(b)(6)**

The Defendants argue that Local 150's unjust enrichment claim (Count II) is duplicative of the copyright infringement claim (Count I) and must be dismissed because it is preempted

6

pursuant to the Federal Copyright Act, 17 U.S.C. § 301.

   1.   Legal Standard

Rule 12(b)(6) permits a defendant to assert by motion that the plaintiff's claim for relief fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (internal citation omitted). Matters outside the scope of the pleadings may not be considered on a motion to dismiss. Fed. R. Civ. P. 12(d). To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). The allegations must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* __ U.S. __, 127 S. Ct. 1955, 1964 (2007). The plaintiff need not plead particularized facts, but the factual allegations in the complaint must be sufficient to suggest a right to relief above the speculative level. *Id.* at 1973-74 & n.14; *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007); *Concentra Health Servs., Inc.* 496 F.3d at 776 (citing *Twombly*, 127 S. Ct. at 1965, 1973 n.14).

   2.   Analysis

Section 301 of the Copyright Act provides that:

On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).  Consequently, the Copyright Act preempts a right under state law if two conditions are met: (1) "the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in § 102"; and (2) "the right must be equivalent to any of the rights specified in § 106."  *Baltimore Orioles, Inc. v. Major League Baseball Players Assoc.*, 805 F.2d 663, 674 (7th Cir. 1986).

Local 150 concedes that the website is "fixed in tangible form and come[s] within the subject matter of copyright as specified in § 102," thus satisfying the first element of the preemption test, but contends that its unjust enrichment claim is not "equivalent" to its copyright claim because the claim is of an equitable nature and seeks recovery for items other than the copying of the copyrighted work.  The Defendants argue that the factual allegations for both claims are identical, that a state law claim based on the same alleged conduct that gives rise to a copyright claim is preempted as a matter of law, and that the damages sought are compensable under the Copyright Act.

"A right under state law is 'equivalent' to one of the rights within the general scope of copyright if it is violated by the exercise of any of the rights set forth in § 106."  *Baltimore Orioles, Inc.*, 805 F.2d at 676.  Section 106 "grants the owner of a copyright the exclusive rights to reproduce (whether in original or derivative form), distribute, perform, and display the copyrighted work."  *Id.* at 677 (citing 17 U.S.C. § 106).  A right is equivalent to a copyright "if . . . it is infringed by the mere act of reproduction, performance, distribution, or display," and even if the claim "requires additional elements to make out a cause of action," unless "the additional elements . . . differ in kind from those necessary for copyright infringement," it is preempted.  *Id.* at 678 n.26.

Under Illinois law, a claim of unjust enrichment requires a plaintiff to show "that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp.*, 545 N.E.2d 672, 679 (Ill. 1989). This court is not the first in this district to consider whether such a claim is preempted by the Copyright Act. Some courts have found the claim not to be preempted. *See, e.g.*, *G.D. Searle & Co. v. Philips-Miller & Assocs.*, 836 F. Supp. 520, 526 (N.D. Ill. 1993) (Plunkett, J.); *McNabb Bennett & Assoc., Inc. v. Terp Meyers Architects*, No. 85 C 8792, 1987 WL 7817, at *6 (N.D. Ill. Mar. 10, 1987) (Williams, J.); *Weigel Broad. Co. v. Topel*, No. 83 C 7921, 1985 WL 2360, at *5 (N.D. Ill. Aug. 21, 1985) (Marshall, J.). Other courts have found that the claim *is* preempted. *See, e.g.*, *Vaughn v. Kelly*, No. 06 C 6427, 2007 WL 804694, at *4 (N.D. Ill. Mar. 13, 2007) (Manning, J.); *Igram v. Page*, No. 98 C 8337, 2000 WL 263707, at *4 (N.D. Ill. Feb. 28, 2000) (Lindberg, J.); *Stephen & Hayes Constr., Inc. v. Meadowbrook Homes, Inc.*, 988 F. Supp. 1194, 1201 (N.D. Ill. 1998) (Alesia, J.). The case holdings show that the success of a defendant's preemption argument corresponds to the plaintiff's failure, through its factual allegations, to establish that its unjust enrichment claim qualitatively differs from its copyright claim.

For example, in *Stephen & Hayes Construction, Inc.*, the plaintiff alleged that a competing designer and builder of residential homes copied its plans and concepts for particular homes without permission and used the plaintiff's finished homes as "models" for its own products. 988 F. Supp. at 1196. The plaintiff's unjust enrichment claim rested on the defendant's profit made from its direction of potential customers to view the plaintiff's homes. *Id.* at 1200. The court concluded that the utilization of plaintiff's homes in this manner was the same conduct as prohibited by the Copyright Act, namely reproduction, distribution, display, or

9

performance, and the claim was therefore preempted. *Id.* at 1201. The complaint contained no allegations that could be reasonably read to allege infringements on the plaintiff's rights *outside* the scope of copyright protection. *See also Blue Nile, Inc.*, 478 F. Supp. 2d at 1250-51 (finding an unjust enrichment claim preempted where a competitor had copied a website and the allegations were only that the defendants obtained profits to which they were not entitled by means of copying the site); *Vaughn*, 2007 WL 804694, at *4 (finding allegations that without the plaintiff's efforts and talents the defendant would not have released a certain recording to be equivalent to a "joint work" claim under the Copyright Act)*, Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 537 (E.D. Va. 2005) (finding an unjust enrichment claim preempted where a computer software manufacturer alleged unjust enrichment against a licensee of the software for making unauthorized copies because reproduction claims are within the province of the Copyright Act).

In contrast, in *McNabb Bennett Associates, Inc.*, the court concluded that the plaintiff's allegations showed that its unjust enrichment claim was not preempted. 1987 WL 7817, at *6. The plaintiff alleged that the defendant wrongfully copied certain architectural drawings and sketches and passed them off as defendant's own. *Id.* at *1. The court read the allegation of "wrongful use" of the drawings and other work product as encompassing such acts as appropriation of "certain facts found in the architectural drawings, such as measurements of distances and angles." *Id.* at *6. It found that such appropriations fell outside of the scope of the Copyright Act and were not preempted. *Id.* Thus, the court concluded that the defendant had, in effect, obtained a windfall of benefits that it would otherwise have had to expend resources to obtain *in addition to* the benefits it obtained by virtue of unauthorized reproduction. Another case concerning unauthorized use of architectural drawings reached a similar conclusion. *See*

*Schuchart & Assocs., Prof'l Eng'rs, Inc. v. Solo Serve Corp.*, 540 F. Supp. 928, 948 (W.D. Tex. 1982). In *Schuchart & Associates*, the defendant had the plaintiffs prepare architectural drawings, for which they obtained copyright registration. *Id.* at 933. It then passed on the drawings to another architect who used them as a guide to design a second, substantially-similar, building in a different location. *Id.* at 934. The court reasoned that, in their unjust enrichment claim, the plaintiffs were seeking "to recover the value of the architectural and mechanical services rendered to the Defendants by Defendants' acceptance and use of Plaintiffs' drawings and specifications." *Id.* at 945. The court also noted that the damages sought, namely the value of services rendered, was not a typical damages claim under the Copyright Act. *Id.* Thus, in both *Schuchart & Associates* and *McNabb Bennett Associates, Inc.*, the fact that the defendants had been able to obtain the benefit of the content of the work to substitute for an independent expenditure of resources or time to create the work from scratch was key to a finding of no preemption.

Local 150's amended complaint alleges that the "action arises out of [the] Defendants' taking, misappropriating, and copying Local 150's [prototype website], and[,] without permission or compensation to Local 150, . . . using copies . . . ." Am. Compl. ¶ 1. The claims for copyright infringement and unjust enrichment are based on the same conduct: the alleged copying of Local 150's website design. However, contrary to the Defendants' contention, the claim for unjust enrichment includes additional allegations. Specifically, it includes the allegation, albeit conclusory, that "Defendants Ward and Team 150 obtained the benefit of the prototype website developed by Local 150 without paying Local 150." *Id.* ¶ 27. Local 150 explains that the "benefit" includes the money defendants Team 150 and Ward saved by copying Local 150's website instead of building their own from scratch (or at least from the original form

11

of the template) and by re-using stock photographs.  Construed in this way, the allegations resemble those of *Schuchart & Associates* and *McNabb Bennett Associates, Inc.*  Finding the reasoning of those courts persuasive, the court similarly finds that Local 150's unjust enrichment claim is not preempted.  Therefore, the motion to dismiss Count II is denied.

### III. CONCLUSION

For the reasons stated above, the defendants' motion to dismiss is denied.  The defendants shall answer within 28 days.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 5, 2008